**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHERRY K. ROBY<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY<br>Defendant, | ) | CASE NO. 3:25-CV-02290-JRK<br><br>JUDGE JAMES R. KNEPP II<br><br>MAGISTRATE JUDGE CARMEN E. HENDERSON<br><br>**REPORT AND RECOMMENDATION** |

## I. Introduction

Sherry K. Roby ("Roby" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disabled child's insurance benefits. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On October 4, 2023, Roby filed an application for disabled child's insurance benefits, alleging a disability onset date of July 31, 1978[1] and claiming she was disabled due to leukemia and epilepsy. (ECF No. 12, PageID #: 115). The applications were denied initially and upon reconsideration, and Roby requested a hearing before an administrative law judge ("ALJ"). (ECF No. 12, PageID #: 145–46). On September 20, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 12,

[1] Federal regulations provide for the payment of disabled child insurance benefits if the claimant is at least eighteen years old and has a disability that began before they turned twenty-two. *See* 20 C.F.R. § 404.350(a)(5).

PageID #: 85–113). On October 7, 2024, the ALJ issued a written decision finding Roby was not disabled. (ECF No. 12, PageID #: 71–80). The ALJ's decision became final on August 18, 2025, when the Appeals Council declined further review. (ECF No. 12, PageID #: 58–60).

On October 23, 2025, Roby filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 14, 15, 17). Roby asserts the following assignment of error: "[t]he ALJ errs by failing to build a logical bridge from the evidence to the conclusion that Sherry was not disabled before age 22." (ECF No. 14, at 3).

## III. Background

### A. Relevant Hearing Testimony

As noted above, Roby testified at the September 20, 2024 ALJ hearing. (ECF No. 12, PageID #: 85–113). Roby testified that she presently lives with her boyfriend. (*Id.* at PageID #: 94). She further testified that she was currently having issues with her epilepsy, taking medication, and having seizures "every once in a while." (*Id.* at PageID #: 97). She indicated that she has "staring seizures" and they began when she was 17. (*Id.*). Roby also detailed her activities of daily living including, making her bed, vacuuming, doing the laundry, shopping, and sweeping the kitchen. (*Id.* at PageID #: 99).

The ALJ posed the following question to Roby's counsel regarding the record, "The question I do have for you counsel is I don't see anything in this file that takes me back to the relevant time period of age 18, 17 and a half and 22." (*Id.* at PageID #: 102). Roby's counsel responded, "Yeah, I do have a couple of [c]ites on that. The 2F, 37 [February 16, 2017, Office Treatment Record] mentions that seizures started at age 17 and then there's 2F, 181 [February 6, 2017, Office Treatment Record] ... they do tie back, but you are correct. There are no

contemporaneous medical records from the year '19." (*Id.*)

**B. Relevant Medical Evidence**

The ALJ also summarized Roby's health records and symptoms:

> The claimant is currently 63 years old. At the hearing, she did not provide any testimony about the relevant time period other than to say that when she was 17, she shook when she had a seizure. She failed to provide detailed testimony about her medical impairments from age 18 until she attained age 22. In her function report, the claimant indicated that she began having seizures when she was 17 years old, but she did not provide any further details. (3E/2).
>
> The objective evidence does not support a finding that the claimant's medically determinable impairments were of such severity as to significantly limit her ability to perform basic work activities. In arriving at this decision, the undersigned considered the following: the claimant's activities of daily living; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the claimant's symptoms; the type, dosage, effectiveness, and side effects of medications. Also considered were the claimant's treatment other than medication; any measures other than treatment related to relieve the symptoms; and any other factors regarding the claimant's functional limitations and restrictions (SSR 16-3p).
>
> The claimant was born on February 3, 1961; she attained age 18 on February 2, 1979, and she attained age 22 on February 2, 1983. However, no medical evidence appears in the file from her alleged onset date, of July 31, 1978, through February 2, 1983. Rather, the oldest medical records in the file are from 2008; 25 years after expiration of the relevant time period. (1F).
>
> In May 2008, the claimant's medical provider noted her history of intractable complex partial seizures with secondary generalization and problems forgetting to take her medication. (1F/1). However, no detail was given regarding this history. Rather, the claimant focused her report on the past few months. (Id.). Although she reported that she continued to have at least 1-2 seizures per month, she did not provide the frequency with which she suffered seizures from 1978-1983. (Id.). In November 2008, the claimant complained of longstanding memory problems, but she did not claim that she had memory problems since the relevant time period. (1F/9).
>
> In 2017, the claimant informed her medical provider that at age 17, a rock hit her on the back of her head; afterwards, she began having seizures. (2F/37). Her fiancé told her medical provider that he had known her since 1985, and she never went more than a month without a seizure. (Id.). He reported that her seizures used to consist of convulsions, but years ago, they changed into staring. (2F/37).

> Problematically, the fiancé's testimony pertains to a time after the relevant time period, as the claimant was older than age 22 in 1985.
>
> No other medical records, from the relevant time period, pertaining to the claimant's medically determinable impairments of epilepsy and traumatic brain injury appear in the file.

(ECF No. 12, PageID #: 78).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 1. Born on February 3, 1961, the claimant had not attained age 22 as of July 31, 1978, the alleged onset date (20 CFR 404.102 and 404.350(a)(5)).
>
> 2. The claimant has not engaged in substantial gainful activity since July 31, 1978, the alleged onset date (20 CFR 404.1571 et seq.).
>
> 3. Prior to attaining age 22, the claimant had the following medically determinable impairments: epilepsy and a traumatic brain injury (20 CFR 404.1521 et seq.).
>
> 4. Prior to attaining age 22, the claimant did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 et seq.).
>
> 5. The claimant has not been under a disability, as defined in the Social Security Act, at any time prior to February 2, 1983, the date she attained age 22 (20 CFR 404.350(a)(5) and 404.1520(c)).

(ECF No. 12, PageID #: 76–79).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability[2]**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she

[2] Although Roby is seeking child's insurance benefits, she is over 18 years old, so his application must be evaluated under the adult standard for determining disability. 42 U.S.C. § 402(d)(1)(B)(ii).

is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). The claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Roby raises one issue on appeal and challenges the ALJ's findings at Step Two. (ECF No. 14, at 7). Roby contends that, "[t]he ALJ er[ed] by failing to build a logical bridge from the evidence to the conclusion that Sherry was not disabled before age 22." (*Id.* at 3). Roby presents three arguments in support of her contention that the ALJ failed to build a logical bridge between the evidence and her step two findings:

> First, the ALJ fails logically as to due assessment of retroactive lay evidence. Second, the ALJ decision fails logically by ignoring SSA rules tending to distinguish assessment approaches for due-to-trauma impairments from other impairments— and making unsupported and contradictory statements related thereto. Third, the ALJ decision fails logically by ignoring the doctor assessment that Sherry has endured tonic-clonic seizures of particularly frequent type, since age 17.

(ECF No. 14, at 8). Relying on *Likes v. Callahan*, 112 F.3d 189 (5th Cir. 1997), Roby argues that the ALJ "[left] out consideration of notable retroactive lay evidence" that provided "evidence about [her] activity-level back to age 17." (ECF No. 14, at 8). Specifically, Roby contends that her function report, filed with her application for benefits, should be considered as "corroborating lay evidence." (*Id.* at 10).

In response, the Commissioner asserts that substantial evidence supports the ALJ's step two finding that Roby did not have a severe impairment before February 2, 1983. (ECF No. 16, at 3). The Commissioner notes that Roby failed to meet her burden at step two as she provides no objective medical evidence during the relevant period, from Roby's alleged disability onset date

of July 31, 1978 until February 2, 1983. (*Id.* at 4). In addition, the Commissioner argues that Roby's reliance on her function report as the sole evidence from the relevant period is unavailing. (*Id.* at 5). Specifically, the Commissioner contends that, "… Plaintiff's own statements [from the function report] are not enough to overcome the lack of evidence for the period at issue and they shed little to no light on Plaintiff's functional abilities and limitations during the applicable timeframe." (*Id.*). The Commissioner further argues that, even assuming the impairments were severe, there was insufficient medical evidence from which to formulate an RFC. (*Id.* at 4).

In her reply, Roby also contends that the ALJ's treatment of her traumatic brain injury was internally inconsistent because, although the ALJ found that the seizures arose from a traumatic brain injury at age 17, the ALJ described the condition as "degenerative and slowly progressing" without explaining the apparent inconsistency. (ECF No. 17, at 2). Claimant also argues that the Commissioner's contention that, "[t]he claimant has only s [sic.] nonsevere medically determinable impairments, no residual functional capacity is warranted" is post hoc rationalization. (*Id.* at 5). And "[b]ased upon the foregoing and upon all the arguments contained in Plaintiff's main brief, Plaintiff requests that the decision below be reversed and that Plaintiff be awarded past-due and future disability benefits." (*Id.* at 6).

**a. Disabled Child's Insurance Benefits and Step Two of the Sequential Framework**

As a preliminary matter, to be entitled to disabled child's insurance benefits, Claimant must show that she was dependent upon a deceased parent who received benefits and that she herself has a disability that began before she reached the age of 22. *See* 20 C.F.R. § 404.350(a). The parties appear to agree that Roby was dependent upon a deceased parent who received benefits. However, Claimant must also demonstrate that she was disabled before her twenty-second birthday (*i.e.*,

from July 31, 1978 until February 2, 1983). *See* 20 C.F.R. § 404.350(a)(5). Claimant, however, disputes the ALJ's step two finding, that she was not disabled during that time frame.

At Step Two of the sequential evaluation process, an ALJ must evaluate whether a claimant has a "medically determinable physical or mental impairment." 20 C.F.R. § 404.1520. A medically determinable impairment ("MDI") "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. The regulations define "objective medical evidence" as "medical signs, laboratory findings, or both, as defined in § 404.1502(f)." 20 C.F.R. § 404.1513.

Moreover, "[u]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." Social Security Ruling ("S.S.R.") 96–4P, 1996 WL 374187, at *1 (S.S.A. July 2, 1996). "Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities, i.e., medical signs and laboratory findings." *Id.*

And "the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled,' as defined by the Act" or on the date Plaintiff attained age 22. *Despins v. Comm'r* of Soc. Sec., 257 Fed. App'x. 923, 929 (6th Cir. 2007). Disability is defined "as the 'inability to engage[] in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* (quoting 42 U.S.C. § 423(d)(1)(A)).

**b. Substantial Evidence Supports the ALJ's Step Two Finding.**

In determining whether the ALJ's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). Thus, when supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241; *see Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)). Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)). Yet to find substantial evidence here the Court need look no further than the ALJ's decision.

At Step Two, the ALJ found the following,

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision. The conclusion that the claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities is consistent with the lack of objective medical evidence and other evidence from the relevant time period.

> The claimant's statements about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the evidence in the file. At the hearing, she testified that when she was 17, her seizures caused her to shake. Although the medical records indicate that the claimant's seizures began when she was 17 years old, due to a traumatic brain injury, they do not provide further detail. (2F/37). Therefore, it is impossible to determine how the claimant was affected by the seizures during the relevant time period. However, it is reasonable to infer that the claimant's epilepsy and traumatic brain injury existed before she attained age 22. These impairments appear to be degenerative and slowly progressing in nature. Therefore, it is reasonable to infer that the claimant suffered from these impairments for years prior to the date of the oldest medical evidence in the file, from 2008. (SSR 18-1p).
>
> It is important to point out that no medical opinions appear in the file during the relevant time period of July 31, 197[8], through February 2, 1983.
>
> Turning next to the prior administrative medical findings, at both the CDBR initial and reconsideration levels, Doctors Corcoran and Bolz found insufficient evidence to establish physical medically determinable impairments and corresponding limitations. (2A/2-3). The undersigned concludes that these findings are unpersuasive, as they were not supported by the evidence in the file, at the time of the doctors' reviews, and they are not consistent with the evidence in the complete file. Again, no medical records, from the relevant time period, of 197[8]- 1983, exist in the file. However, the file does contain sufficient evidence to establish that the medically determinable impairments, of epilepsy and a traumatic brain injury, existed during the relevant time period. (1F/1; 2F/37). Such evidence is consistent with finding that the claimant has nonsevere impairments of epilepsy and a traumatic brain injury, and that no corresponding limitations are needed due to insufficient evidence to establish that they were severe.
>
> As the claimant has only nonsevere medically determinable impairments, no residual functional capacity is warranted.

(ECF No. 12, PageID #: 79).

This Court finds substantial evidence supports the ALJ's determination that Roby did not have a severe impairment. The Court does not reach this conclusion merely because the record contains insufficient evidence to establish that Roby was disabled during the relevant period. Rather, the record contains substantial evidence supporting the ALJ's Step Two findings: the lack of contemporaneous medical evidence from the relevant period, the records cited by the ALJ

merely mention that Roby's seizures began at age 17, and those records do not detail the severity of her impairments or the extent to which they limited her functioning during the relevant period.

In reaching this conclusion, the Court notes the ALJ's observation that the record contains no contemporaneous medical evidence from the relevant time period, which extended from July 31, 1978, through February 2, 1983. (ECF No. 12, PageID #: 79). Moreover, the ALJ explicitly cited to Claimant's hearing testimony in which she states that her seizures began at the age of 17 due to a traumatic brain injury. (*Id.)*. As the ALJ noted, and as Roby's counsel conceded at the hearing, the medical records cited by the ALJ *merely mention* that Roby's seizures began at age 17. (*Id.* at PageID #: 102). The records *do not* provide contemporaneous evidence concerning the severity of her impairments or the extent to which they limited her functioning during the relevant period. (*Id.*). Thus, the ALJ reasonably inferred from the retrospective medical history that Roby's impairments existed before age 22 but concluded that the record contained "insufficient evidence to establish that [the impairments] were severe." (*Id.* at PageID #: 79).

Moreover, "[i]t is the claimant's responsibility to submit sufficient evidence that allows the Commissioner to make a determination as to the nature and severity of any impairments, [and] whether the duration requirement has been met." *Wright v. Berryhill*, No. 3:15-CV-445-HBG, 2017 WL 1194357 (E.D. Tenn. Mar. 30, 2017). As correctly noted by the ALJ, the oldest records provided by Claimant are from 2008. (ECF No. 12, PageID #: 78, 289–90). In the office treatment record, dated May 22, 2008, Claimant's medical provider, Kimberly Cole, MSN, FNP-C, noted her "history of intractable complex partial seizures with secondary generalization" and "problems with forgetting to take her medication." (*Id.* at PageID #: 289). Claimant reported that she was "not sure how many seizure[s] she has actually had over the past few months" yet "she continu[ed] to

have at least 1-2 seizures per month." (*Id.*). However, Claimant did not provide the frequency with which she experienced seizures throughout the relevant time period. (*Id.*).

Furthermore, in the office treatment record dated November 12, 2008, Claimant reported continued issues with forgetting to take her medications, seizure frequency of at least 1-2 seizures per month, and "memory problems that are longstanding," but she did not discuss whether she experienced these concerns throughout the relevant time period. (*Id.* at PageID #: 298–90). And as the Sixth Circuit has held, "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Comm'r of Soc. Sec.*, 88 Fed. Appx. 841, 845 (6th Cir. 2004). In any event, the ALJ considered the record, inferred the existence of Roby's impairments and concluded that there was "insufficient evidence to establish that [the impairments] were severe." (ECF No. 12, PageID #: 79).

Although evidence may exist that could support a contrary conclusion, the Court may not overturn the ALJ's determination where, as here, substantial evidence supports the conclusion reached by the ALJ. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record"). Thus, because the record contains substantial evidence supporting the ALJ's Step Two findings, these findings will not be disturbed by this Court.

**i. The Retrospective Lay Evidence**

Roby first contends that the "ALJ failed to demonstrably consider corroborating retroactive lay evidence" thus, "remand is required because the decision leaves it impossible to determine whether the ALJ actually considered the corroborating lay evidence at all." (ECF No. 17, at 1–2). Claimant cites to *Likes v. Callahan* to support her claim that the ALJ "[left] out consideration of

notable retroactive lay evidence" that provided "evidence about [her] activity-level back to age 17." (ECF No. 14, at 8); *see Likes v. Callahan*, 112 F.3d 189 (5th Cir. 1997). Specifically, Roby contends that her function report, filed with her application for benefits, should be considered as "corroborating lay evidence." (ECF No. 14 at 10).

It is well settled that an ALJ need not discuss every piece of evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party); *see also Patrick v. Astrue*, No. 07–161–JBC, 2008 WL 3914921, at *2 (E.D. Ky. Aug. 19, 2008) ("even though an ALJ must consider the lay testimony, he is not required to spell out in his decision what weight he gave to the testimony") (citing *Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir. 1989) (rejecting claimant's argument that the administrative agency had to spell out in its opinion the weight attached to claimant's husband's testimony, where the agency reviewed the "entire record which was before the administrative law judge")).

While the ALJ did not discuss every piece of evidence that Roby cites, a review of the ALJ's decision shows that she considered lay evidence concerning the onset of Roby's impairments. The ALJ discussed Roby's hearing testimony that, at age seventeen, her seizures caused her to shake and considered the retrospective history recorded by Dr. Jehi. (ECF No. 12, PageID #: 79). The ALJ also directly cited to Roby's function report finding, "[t]he claimant indicated that she began having seizures when she was 17 years old, but she did not provide any further details." (*Id.* at PageID #: 78). The ALJ then concluded that "the file does contain sufficient evidence to establish that the medically determinable impairments, of epilepsy and a traumatic brain injury, existed during the relevant time period." (*Id.* at PageID #: 79)

Moreover, the Fifth Circuit's holding in *Likes* does not support Roby's challenge to the ALJ's consideration of the retrospective lay evidence. In *Likes*, the plaintiff argued that "his disability [was] caused by post-traumatic stress disorder (PTSD) stemming from his 1966 war duty in Vietnam. Likes underwent a Veterans Administration examination in July 1968." *Likes*, 112 F.3d at 190. In 1991, Likes was diagnosed with chronic PTSD and mental health professionals determined that he had suffered from chronic PTSD since 1966. *Id.* In his decision, "[t]he ALJ accepted that Likes had suffered from severe PTSD beginning in 1991 but determined that the 1968 examination and Likes' uncorroborated statements were insufficient to establish that he had a medically determinable mental impairment before his insured status expired." *Id.* Ultimately, the Fifth Circuit held that "[r]etrospective medical diagnoses constitute relevant evidence of pre-expiration disability, and properly corroborated retrospective medical diagnoses can be used to establish disability onset dates." *Id.* at 191.

Unlike *Likes*, this case does not involve an ALJ who rejected the existence of the impairment during the relevant period. Here, the ALJ considered the record and established the existence of Roby's impairments. Nor does *Likes* establish that *retrospective lay evidence alone* compels a finding of disability. Unlike here, the record in Likes included a contemporaneous 1968 Veterans Administration examination, later medical diagnoses dating the condition to 1966, and corroborating lay evidence. *Likes*, 112 F.3d at 190. Roby does not identify a retrospective medical opinion establishing that her epilepsy or traumatic brain injury caused disabling functional limitations between July 31, 1978, and February 2, 1983. Thus, Roby's reliance on *Likes* is unavailing.

**ii. SSR 18-01p and Traumatic Injury Discussion**

Next, Roby contends that "[t]he ALJ admits that a traumatic injury or other traumatic event caused Plaintiff's at-issue impairments, and yet later irrationally fails to analyze the conditions as if they were not based on trauma." (ECF No. 14, at 10). Roby finds "[t]he ALJ's basis for deeming the impairments 'degenerative and slowly progressing in nature' is not clear" and that the ALJ should have analyzed "[an] impairment caused by trauma differently than one that is not is a principle that is apparent in both SSR 18-01p and the 11.00 listings." (*Id.*). These contentions are also unavailing.

SSR 18-01 is relevant to determining a claimant's established onset date. SSR 18-01 provides, "[i]f the evidence of record supports a finding that the claimant met the statutory definition of disability on the date of the traumatic event or traumatic injury, we will use that date as the date that the claimant first met the statutory definition of disability." And the Sixth Circuit has held that when "there is no finding that the claimant is disabled… no inquiry into onset date is required." *Key v. Callahan,* 109 F.3d 270, 274 (6th Cir. 1997). Here, the ALJ did not address Roby's established onset date or the applicability of SSR 18-01p because the ALJ found that Roby was not disabled at Step Two. (ECF No. 12, PageID #: 79). "Because the ALJ did not find Claimant to be disabled, SSR 18-01p does not apply." *Anton v. Comm'r. of Soc. Sec.*, No. 5:23-CV-00391-CEH, 2024 WL 449534 (N.D. Ohio Feb. 6, 2024); *see also Kuntz v. Comm'r. of Soc. Sec.*, No. 5:24-CV-01849, 2026 WL 796802 (N.D. Ohio Mar. 23, 2026) ("Kuntz cannot object that the ALJ improperly applied SSR 18-01p because the ALJ found Kuntz was not disabled.").

Roby also takes issue with the ALJ's inference that her impairments "appear to be degenerative and slowly progressing in nature." (ECF No. 14, at 10). Although, Roby debates the accuracy of the ALJ's statement, it does not alter the ALJ's ultimate conclusion that the record

establishes only "nonsevere medically determinable impairments." (ECF No. 12, Page ID #: 79). *See, e.g.*, *Garcia v. Comm'r of Soc. Sec.*, No. 1:16 CV 2682, 2019 WL 838371, at *12 (N.D. Ohio Feb. 12, 2018) ("The undersigned finds, however, that even if this reason lacks support in the record, it is harmless because the ALJ's other reasons provide substantial evidence."); *Geer v. Commr. of Soc. Sec.*, No. 3:23-CV-00009-JJH, 2023 WL 9268483 (N.D. Ohio Nov. 20, 2023), *report and recommendation adopted*, No. 3:23-CV-9, 2023 WL 9270498 (N.D. Ohio Dec. 7, 2023).

Moreover, Roby suggests that the ALJ should have considered Claimant's impairments under the 11.00 listings. (ECF No. 14, at 10). But because the ALJ found that Roby's epilepsy and a traumatic brain injury were not severe impairments at Step Two, she did not need to perform a Step Three analysis of those impairments. *See*, *e.g.*, *Jones v. Astrue*, 2013 WL 5487416, at *3 (S.D. Ohio Sept. 29, 2013) ("[A] finding that Plaintiff suffered from a 'severe' impairment at Step 2 of the sequential analysis is a prerequisite to determining whether Plaintiff's impairment met or equaled a Listed impairment at Step 3."); *Smith–Johnson v. Comm'r of Soc. Sec.*, 2012 WL 7784979, at *6 (E.D. Mich. Dec.14, 2012) ("Requiring the ALJ to perform a Step Three analysis of every finding in the transcript ... is not required by either the Social Security Regulations or case law.") (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496 (6th Cir. 2006)), adopted by 2013 WL 1187031 (E.D. Mich. Mar. 21, 2013); *Robinson v. Comm'r. of Soc. Sec.*, No. 13-CV-11637, 2014 WL 3528434, at *13 (E.D. Mich. July 16, 2014).

**iii. The ALJ adequately considered Dr. Jehi's assessment.**

Finally, Roby contends that the ALJ failed to consider Dr. Jehi's assessment concerning the onset and frequency of her seizures. Specifically, Roby characterizes Dr. Jehi's treatment

record as establishing that her tonic-clonic seizures began at age seventeen and thereafter occurred in clusters every few days. (ECF No. 14, at 12–13).

In her February 2017 treatment record, Dr. Jehi noted the following regarding Roby's 'Epilepsy History,'

> Seizures started at 17. She reports she had a head trauma - a rock hit her in the back of her head - without loss of consciousness and soon after - she does not remember exactly when - she started having seizures… Her fiance [sic] says he has known her since 1985 and she has never gone more than a month without a seizure but that seizure symptoms changed. Initially, she presumably had convulsions but years ago (again not sure when) seizures changed to staring.
>
> Seizures are not preceded by any waring/aura. Per witness, spells are described as head Twisting up" [sic] ("she cringes and opens mouth in a weird way"), drops her head and she starts staggering around She may fall to the ground, if someone does not hold her. No hand movements. This goes on for 1-2 minutes and she is then tired for 45minutes [sic] to an hour. She doesn't remember things that happen during the seizure.
>
> The typical frequency of this seizure type is multiple in clusters that happen every few days (maybe in dusters of up to 10-15 within few hours). Her last cluster in Christmas eve was followed by increasing daily Levetiracetam by 500mg and she hasn't had any seizures since.

(ECF No. 12, PageID #: 346). Dr. Jehi's February 2017 treatment note then distinguishes between two seizure types. Under "Seizure type 1," Dr. Jehi described dialeptic/head-motor seizures involving head twisting, dropping the head, staggering, and possible falls. (ECF No. 12, PageID #: 346). Dr. Jehi recorded that the frequency of this seizure type was "clusters of seizures every couple of days," and noted that the clusters could include as many as ten to fifteen seizures within a few hours. (*Id.*). Dr. Jehi separately identified "Seizure type 2: GTC," which involved stiffening, shaking, tongue biting, and frothing at the mouth. (*Id.*). Significantly, Dr. Jehi recorded that Roby's "Last GTC seizures" had occurred more than ten years earlier. (*Id.*).

However, the record does not support Claimant's suggestion that Dr. Jehi opined that her GTC seizures continued to occur regularly or in clusters every few days. (ECF No. 12, PageID #:

346). The frequent seizure clusters identified by Dr. Jehi concerned the head-motor/dialeptic seizure type. (*Id.*). The medical assessment indicates that generalized tonic-clonic seizures began when Roby was seventeen, but it does not state that the generalized tonic-clonic seizures continued at the same frequency. (*Id.*).

Nor did the ALJ ignore Dr. Jehi's assessment. The ALJ considered Dr. Jehi's 2017 medical assessment about the onset of Claimant's seizures and the traumatic brain injury in her decision. (ECF No. 12, PageID #: 79). The ALJ acknowledged that "the medical records indicate that the claimant's seizures began when she was 17 years old, due to a traumatic brain injury," but explained that the records "do not provide further detail" sufficient to determine how Claimant was affected by those seizures during the relevant period. (*Id.*). Even so, the ALJ found it reasonable to infer that Claimant's epilepsy and traumatic brain injury existed before she attained age twenty-two. (*Id.*). And as the Commissioner correctly notes, although the ALJ found the medical evidence to reflect that Roby was diagnosed with "seizure type 2" and with an onset of "17 years of age" [a] "mere diagnosis…says nothing about the severity of the condition." *Higgs,* 880 F.2d at 863; (ECF No. 12, PageID #: 345).

In sum, the ALJ formulated a logical bridge between the evidence in the record and her Step Two determination. She established that Roby's epilepsy and traumatic brain injury existed before age twenty-two, considered Roby's testimony concerning her seizures at age seventeen, considered retrospective medical history documented by Dr. Jehi, and explained that the record lacked sufficient evidence concerning Roby's functional limitations during the relevant period. It is the Claimant's "burden to prove the severity of her impairments." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Accordingly, substantial evidence supports the ALJ's determination that

Roby's impairments were not "severe" as well as the conclusion that she was not disabled before attaining age 22.

**VI. Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Roby's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: August 31, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).